UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KING MAN HO**,<br><br>          Plaintiff,<br><br>          v.<br><br>**RADIO FREE ASIA**, *et al.*,<br><br>          Defendants. | Case No. 23-cv-01336 (CRC) |

**MEMORANDUM OPINION AND ORDER**

In March 2022, Plaintiff King Man Ho was terminated from Radio Free Asia ("RFA")—a government-funded news organization that operates in six Asian countries under the aegis of the U.S. Agency for Global Media ("USAGM"). Ho sued RFA and his two direct supervisors ("Defendants") in District of Columbia Superior Court, asserting various claims under D.C. law, including wrongful termination in violation of public policy. The Defendants removed the case to federal court on the grounds that Ho's wrongful termination claim arises under federal law. Finding that it lacks subject matter jurisdiction over Ho's claims, the Court grants his motion to remand the case to D.C. Superior Court.

**I.  Background**

The Court draws the following facts from the Plaintiff's complaint and accepts them as true. See Colon v. Ashby, 314 F. Supp. 3d 116, 120 (D.D.C. 2018) ("When assessing a remand motion, . . . the court must assume all of the facts set forth by plaintiff to be true." (cleaned up)).

King Man Ho worked at Radio Free Asia for over two decades until his termination in 2022. Compl. ¶¶ 14–15, 47; see also Pl.'s Mot. to Remand at 4 (clarifying the date Ho was fired). At the time of his termination, Ho served as Cantonese Service Director and led a team of journalists, commentators, and employees in RFA's Hong Kong and D.C. offices. Id. ¶ 16.

The RFA is a private, non-profit news organization funded by the U.S. government and its operations are governed by the International Broadcasting Act of 1994 ("IBA"). Id. ¶¶ 5, 10. Two of the IBA's provisions are relevant here. First, per the IBA, RFA's mandate is to "(1) provide accurate and timely information, news, and commentary about events in Asia and elsewhere; and (2) be a forum for a variety of opinions and voices from within Asian nations whose people do not fully enjoy freedom of expression." 22 U.S.C. § 6208(b). Second, the IBA creates a "firewall" between RFA journalists and political actors. See 22 U.S.C. § 6204(b). The firewall is violated when "any person within the Executive Branch or a [USAGM] Network, but outside the newsroom, attempts to direct, pressure, coerce, threaten, interfere with, or otherwise impermissibly influence" USAGM journalists. USAGM BROADCASTING ADMIN. MANUAL, Part II, Section 531.3(c).

Following Hong Kong's pro-democracy demonstrations in 2019 and the resulting passage of a "National Security Law" in 2020, Hong Kong's government forced many independent media outlets to close. Compl. ¶¶ 20, 23–25. According to the complaint, RFA was left "the only viable independent media outlet providing timely news and commentary in Hong Kong." Id. ¶ 26. In 2021, however, RFA created contingency plans to suspend operations in its Hong Kong office and allegedly started pressuring journalists, including Ho, to "tone down" the content of news and commentary. Id. ¶ 30. In September of that year, a former journalist with "deep professional and personal affiliations within Hong Kong," including with the Hong Kong government, was appointed to the RFA Board of Directors. Id. ¶¶ 31–33. Ho believed that the director's appointment violated RFA's Conflict of Interest policy, which provided that "RFA employees are expected to take scrupulous care to avoid any action or relationship" that could "create the appearance of . . . losing independence, impartiality, or honest[y]." Id. ¶ 34.

In January 2022, RFA terminated its Cantonese Service talk shows and commentary programs and then shut down all operations in Hong Kong soon thereafter. Id. ¶¶ 37, 43. In

response, Ho complained to both RFA management and members of the Congressional-Executive Commission on China ("CECC"), a commission tasked with monitoring human rights and rule-of-law developments in China.  Id. ¶¶ 36–46.  In his complaints, Ho expressed concerns that RFA's appointment of the new board member and decision to cease operations violated RFA's Conflict of Interest Policy and the IBA's mandate and firewall provision.  Id. ¶¶ 36, 38, 42.  Additionally, at various points in his tenure as Cantonese Service Director, including during a meeting on March 10, 2022, Ho raised concerns about RFA's treatment of independent contractors.  Id. ¶¶ 44–46.  RFA's contracts typically required that independent contractors work no more than thirty hours per week and that they be paid for actual hours worked on a bi-weekly basis.  Id. ¶ 45.  RFA allegedly instructed Ho, however, to record any time worked in excess of the contract hours as time worked at the end of the month—an accounting practice that Ho claims "inaccurately represent[ed] [contractors'] actual work hours."  Id.

On March 15, 2022, RFA terminated Ho's employment on the grounds that he was not "in-line" with management and had engaged in "[i]nsubordination or other disrespectful conduct, including but not limited to disseminating false or misleading information about Radio Free Asia."  Id. ¶ 47; see also Pl.'s Mot. to Remand at 4.  In March 2023, Ho filed suit against RFA and his two direct supervisors in the District of Columbia Superior Court, alleging, among other counts, wrongful discharge in violation of public policy.  Id. ¶¶ 5–7, 60–64.  The defendants timely removed the case to federal court under 28 U.S.C. §§ 1331 and 1367.  Not. of Removal ¶ 5.  Ho now moves to remand the case to D.C. Superior Court on the grounds that this Court lacks subject matter jurisdiction.

II. **Legal Standard**

A defendant may remove a civil action from state to federal court if the federal district courts have original subject matter jurisdiction over the case.  28 U.S.C. § 1441(a).  If the district

court lacks jurisdiction, it must remand the action to state court.  See Republic of Venezuela v. Philip Morris Inc., 287 F.3d 192, 196 (D.C. Cir.); 28 U.S.C. § 1447(c).  Courts in this District "construe[] removal jurisdiction strictly, favoring remand where the propriety of removal is unclear."  Ballard v. D.C., 813 F. Supp. 2d 34, 38 (D.D.C. 2011).  As a result, the party opposing remand "bears the burden of establishing that subject matter jurisdiction exists in federal court."  Mizell v. SunTrust Bank, 26 F. Supp. 3d 80, 84 (D.D.C. 2014) (cleaned up).

28 U.S.C. § 1331 establishes federal jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.  In a "special and small category" of cases, Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006), federal courts may exercise jurisdiction over state-law claims if the "vindication of a right under state law necessarily turn[s] on some construction of federal law," Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808 (1986) (cleaned up).  Under the so-called Grable exception, federal courts have jurisdiction over state-law claims if federal issues are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Gunn v. Minton, 568 U.S. 251, 258 (2013) (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313–14 (2005)).

### III.  Analysis

Even though the complaint asserts only state-law claims, Defendants contend that this case is part of the "special and small category" of cases where federal jurisdiction is nonetheless proper.  Specifically, Defendants assert that Ho's wrongful discharge claim arises under federal law.  Not. of Removal ¶ 10.  Under District of Columbia law, a claim for wrongful discharge in violation of public policy has two elements:  A plaintiff must first "point to some identifiable policy that has been officially declared in a statute[,] [] [a] municipal regulation, or [] the Constitution," and second demonstrate "a close fit between the policy and the conduct at issue in the allegedly wrongful

termination." Clay v. Howard Univ., 128 F. Supp. 3d 22, 27 (D.D.C. 2015) (cleaned up) (quoting Davis v. Cmty. Alternatives of Washington, D.C., Inc., 74 A.3d 707, 709–10 (D.C. 2013)). Ho alleges that he was wrongfully discharged for complaining that RFA was in violation of three sets of laws: (1) the IBA mandate provision, (2) the IBA firewall provision, and (3) D.C. labor laws governing RFA's contracts with independent contractors. Compl. ¶¶ 62, 64.

Because the Court finds that the wrongful discharge claim does not present a substantial federal question under Grable, it will grant Ho's motion to remand. "The substantiality inquiry under Grable looks" not to the significance of the issue to the litigants, but rather "to the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. "Neither the federal government nor the federal system as a whole has a pressing interest in ensuring that a federal forum is available to defendants in state tort suits that include passing references to a federal statute cited only as an articulation of public policy." Fracasse v. People's United Bank, 747 F.3d 141, 145 (2d Cir. 2014) (per curiam).

The Second Circuit's interpretation of a similar wrongful termination law is instructive. In Fracasse, plaintiffs sued under Connecticut's wrongful termination cause of action, which requires former at-will employees to "prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Id. at 143 n.1 (emphasis omitted). The plaintiffs cited the Fair Labor Standards Act ("FLSA") as the source of the relevant public policies. Id. at 142. But this invocation of the FLSA was not substantial enough to establish federal jurisdiction. Id. at 145. The Second Circuit found that any federal interest in providing "a federal forum for state tort claims linked tangentially to public policy underlying a federal statute [wa]s *de minimis*." Id. "This [was] so, if for no other reason, because employees—those whom the FLSA was enacted to protect—[would] in any event have direct access to a federal forum to assert their rights under the FLSA." Id. See also Wroten v. Assocs. for Women's Med., No. 15-cv-2441,

2015 WL 5276373, at *2 (E.D. Pa. Sept. 9, 2015) (determining that a wrongful termination claim in violation of Pennsylvania public policy did not raise a substantial federal issue "because adjudication of [the] claim [did] not require [the] [c]ourt to interpret or apply [federal law]").

The Court agrees with the Second Circuit's reasoning. "[S]omething more"—beside the question of whether the IBA embodies the public policy behind plaintiff's wrongful termination claim—"is needed" to create a substantial federal issue. Gunn, 568 U.S. at 264. A contrary conclusion would open the flood gates to state-law claims as most any public policy is reflected somewhere in the federal code. Moreover, as was critical to the Second Circuit in Fracasse, the doors of federal court remain open to plaintiffs alleging actual violations of the IBA. See, e.g., Open Tech. Fund v. Pack, 470 F. Supp. 3d 8, 12 (D.D.C. 2020) (plaintiffs sued the USAGM CEO in federal court for violations of the IBA), vacated as moot, No. 20-5195, 2021 WL 11096700 (D.C. Cir. Mar. 16, 2021). The Court thus concludes that Ho's wrongful termination claim does not raise a substantial federal issue and the Court lacks subject matter jurisdiction over this action.

## IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [8] Plaintiff's Motion to Remand is **GRANTED**. It is further

**ORDERED** that the Clerk remand the action to the Superior Court for the District of Columbia.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: October 18, 2023